BLANE A. SMITH (SBN 96795)
EMMANUEL R. SALAZAR (SBN 240794)
GARRETT W. BRANDENBURGER (SBN 257236)
**FARMER SMITH & LANE, LLP**
3620 American River Drive, Suite 218
Sacramento, CA 95864
Telephone: (916) 679-6565
Fax: (916) 679-6575
E-mail: bsmith@farmersmithlaw.com

Attorneys for Plaintiffs
JEFF DRAZAN and RORY O'DRISCOLL

**THE UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JEFF DRAZAN and RORY O'DRISCOLL,<br><br>Plaintiffs,<br><br>vs.<br><br>ATLANTIC MUTUAL INSURANCE COMPANY, ONEBEACON INSURANCE COMPANY, and ONEBEACON INSURANCE GROUP LIMITED<br><br>Defendant. | Case No. 3:10-cv-01371-SI<br><br>**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT; BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING and FRAUD**<br><br>**DEMAND FOR JURY TRIAL (FRCP 38(b); LR 3-6)** |

**PRELIMINARY FACTUAL ALLEGATIONS**

1. Defendants Atlantic Mutual Insurance Company, OneBeacon Insurance Company and OneBeacon Insurance Group Limited, wrongfully refused to defend and indemnify Plaintiffs against liability confronted in a civil action filed in the United States District Court for the Western District of Texas, *MessageOne, Inc. v. FrontBridge Technologies, Inc. and MessageRite*, Civil Action. No. A-04-CA-711-LY (hereinafter "the Underlying Action"). Defendants continue, notwithstanding an ongoing duty of good faith, to refuse to reimburse Plaintiffs for millions of dollars of defense and indemnity expenses.

Defendants rely, in their denial of defense, indemnity, and reimbursement, on a policy that fails to meet California legal standards of "understandability" and on a biased and one-sided investigation that contravenes the legal standards that apply to liability insurers. Defendants persistently refused, and continue to refuse, to acknowledge that the Underlying Action presented a covered loss, for purposes of indemnity, and a potentially covered loss, for purposes of defense obligations. As the disclosure of Atlantic Mutual's policy drafting history will reveal, Defendants drafted a policy by which they misrepresented an intent to properly investigate, defend and indemnify liability like that alleged in the underlying action, and concealed their intent to refuse Defendants' policy benefits. Defendants OneBeacon Insurance Company and OneBeacon Insurance Group Limited, upon acquisition of Atlantic Mutual, ratified and renewed this policy, adopting and reiterating to Plaintiffs the misrepresentations it contained. Plaintiffs incurred $2,805,782.80 in the defense of the underlying action and paid $7,550,000 to settle the underlying action. Plaintiffs' other insurers have all negotiated settlements with Plaintiffs by which $3,725,000 of Plaintiffs' expenditures have been reimbursed. Defendants alone persist in their refusal to meet their obligations and have compelled Plaintiffs to pursue legal recourse. Plaintiffs now seek recovery for breach of contract, breach of the obligation of good faith and fair dealing, fraud, and misrepresentation.

2. In doing the things alleged in this pleading, each Defendant acted by and through each of the other Defendants as parent and subsidiary corporations, or the alter ego of one another, to secure a common benefit. In March of 2004, after the issuance of the first of two policies at issue here, OneBeacon Insurance Company, a subsidiary of OneBeacon Insurance Group Limited, acquired Atlantic Specialty Insurance Company, a subsidiary of Atlantic Mutual Insurance Company, and the renewal rights to Atlantic Mutual's commercial insurance business (including the subject policies), as well as the unearned premiums on this business. After this acquisition, on June 5, 2004, OneBeacon renewed the policy drafted by

Farmer Smith & Lane, LLP

Atlantic Mutual, adopting to its own use the policy as drafted and receiving a premium for it. OneBeacon reiterated all representations in the policy and ratified them as its own. Following the purchase, OneBeacon Insurance Company shared resources with Atlantic Mutual Insurance, as is evident from Defendants' denial letter of April 12, 2006 that appeared on OneBeacon Insurance Company letterhead, was signed by a OneBeacon Insurance Group examiner, and repeatedly stated that "[i]t is the position of OneBeacon Insurance Group" that coverage afforded under the policy did not apply. Defendant OneBeacon Insurance Company also signed legal documents as the representative of Atlantic Mutual Insurance Company.

3. **Jurisdiction.** Plaintiffs Jeff Drazan and Rory O'Driscoll (hereinafter Drazan and O'Driscoll), are natural persons who reside in San Mateo County, California. Defendant Atlantic Mutual Insurance Company is a corporation domiciled in the State of New York and licensed to transact the business of liability insurance in the State of California. Defendant OneBeacon Insurance Company is a corporation domiciled under the laws of the State of Pennsylvania and licensed to do business in the State of California. Defendant OneBeacon Insurance Group Limited is a corporation domiciled in Bermuda, and doing business in the State of California through its subsidiaries, OneBeacon Insurance Company and Atlantic Mutual Insurance Company. Plaintiffs seek to recover from Defendants sums substantially in excess of $75,000. There is complete diversity between the parties and an amount in controversy, exclusive of interest and costs, sufficient to satisfy the jurisdictional requirements of 28 U.S.C. § 1332.

4. Venue is proper in this court pursuant to 28 U.S.C. § 1391(a)(1) since the Defendants reside in this district, pursuant to § 1391(c).

5. **Intradistrict Assignment.** Plaintiffs request assignment of this matter to the San Francisco Division wherein Plaintiffs reside, Defendants reside, and events, omissions and property that were subject to this action were and are situated.

6. Defendants issued to FrontBridge Technologies, Inc., and to its officers and directors, including Plaintiffs Jeff Drazan and Rory O'Driscoll, Policy No. 761-00-58-32-0003 as a renewal of Policy No. 761-00-58-32-0002. Both policies, effective June 5, 2003 through June 5, 2005 are collectively referenced hereinafter as "the Policy". This policy was originally issued by Atlantic Mutual Insurance Company. 761-00-58-32-0002 was a renewal on Atlantic Mutual forms issued by the OneBeacon defendants after their acquisition of Atlantic Mutual.

7. FrontBridge Technologies, Inc. was sued in the Underlying Action on October 29, 2004.

8. Plaintiffs tendered to Defendants a request for defense and indemnity in the Underlying Action at various times during its pendency, including on March 15, 2006. Defendants knew, at all times relevant, that the allegations of the Underlying Action raised the potential that any damages awarded therein would be covered by the Policy.

9. On April 12, 2006, Defendants responded to the tender of the defense and indemnity with a denial, without any investigation of the claim submitted. This denial is indicative of Defendants' intent, at the time the Policy was sold and renewed, to withhold policy benefits. Defendants cited inapplicable policy limitations, or policy limitations that applied to only parts of the liability claimed in the underlying action, as a basis for refusing to defend or investigate further. Defendants asserted that the portions of the Policy labeled as "umbrella" coverage served only as following from excess coverage, reflecting their pre-existing intent to withhold the broader protection promised by an umbrella policy. Plaintiff's as assignees of FrontBridge contractual rights, again requested on their own behalf payment for defense and indemnity. When confronted with renewed claims for coverage, including claims presented after settlement of the Underlying Action, Defendants persisted in conducting a belated investigation that was biased, one-sided, and focused on developing a



Farmer Smith & Lane, LLP

basis on which to defeat coverage, all in contravention of the terms of the Policy, the duties of insurers under California law, and the implied obligation of good faith and fair dealing.

10. As a direct and legal result of Defendants' misrepresentation, refusal to investigate, biased and one-sided investigation, refusal to defend, and refusal to settle the Underlying Action, the Plaintiffs undertook the investigation, defense and settlement of the Underlying Action at their own expense, incurring substantial monetary damages.

11. FrontBridge Technologies, Inc. assigned all rights against Defendants to Plaintiffs Drazan and O'Driscoll.

12. Plaintiffs have repeatedly demanded of Defendants reimbursement of the sums incurred by Plaintiffs in the investigation, defense and settlement of the underlying action. While feigning an effort at investigation of, and resolution of, these demands, Defendants have in fact continued to stonewall acknowledgement of their obligations and have continued to refuse Plaintiffs' request for reimbursement.

## I. <u>FIRST COUNT (Breach of Contract)</u>

13. Plaintiffs incorporate by reference as though fully set forth the allegations in paragraphs 1 through 12 of this complaint.

14. The Policy provides, in the section affording coverage for "personal and advertising injury liability", through the terms of its "insuring agreement" that,

> "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply." (CG 00 01 07 98 form, p. 4.)

15. The Policy further provides, on page 1 of the Commercial General Liability Coverage Form, that,



Farmer Smith & Lane, LLP

"The words 'we'...refer to the company providing this insurance. The word 'insured' means any person or organization qualifying as such under Section II – Who Is An Insured. (CG 00 01 07 98 Form, p. 1.)

The named insured, FrontBridge Technologies, Inc., is designated on the Declarations of the policy as a corporation. 'Section II – Who Is An Insured' states that where the insured is designated in the Declarations as,

"an organization other than a partnership, joint venture or limited liability company, you are an insured. Your 'executive officers' and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders." [CG 00 01 07 98 Form p. 7.]

16. At all times relevant, Plaintiffs were executive officers, directors and stockholder representatives of FrontBridge Technologies, Inc.

17. The policy defined the term "personal and advertising injury" in the Commercial General Liability Coverage Form, CG 00 01 07 98, and then purported to redefine it through an exclusion buried in the materials entitled, "Exclusion-Intellectual Property". This endorsement reflected additional exclusions but added a "redefinition" of "personal and advertising injury" to mean,

"...injury, including consequential 'bodily injury', arising out of one of more of the following offenses:

* * *

d. Oral or written publication of material that slanders or libels a person or organization. This does not include any slander or libel related to the actual or alleged infringement or violation of any intellectual property rights or laws;

e. Oral or written publication of material that disparages a person's or organization's goods, products or services. This does not include any disparagement related to the actual or alleged infringement or violation of any intellectual property rights or laws;



Farmer Smith & Lane, LLP

* * *

g. The use of another's advertising idea in your 'advertisement' or

h. Infringing upon another's copyright, trade press or slogan in your 'advertisement'. (Form VCG 217 11 00).

18. Defendants afforded the coverage described in the preceding paragraphs on a primary basis with limits of $1 million.

19. The policy also provided "Commercial Umbrella Liability Coverage" with limits of $4 million. The insuring agreement for this coverage stated,

> "We will—where permitted by law—pay on behalf of the Insured the 'Ultimate Net Loss' because of 'personal and advertising injury' to which this insurance applies. Where we are not permitted by law to pay on behalf of the Insured, we will indemnify the Insured for Ultimate Net Loss sustained under this coverage. We will have the right and duty to defend 'suit' seeking such damages but: ...our duty to defend applies only to 'suits' not covered by any 'Underlying Insurance' shown in the Umbrella Declarations or by any other insurance;...(Form VCU 100 12 99)."

20. The Commercial Umbrella Liability Coverage Form defined the word "we" to refer to the company providing the insurance. It defined the word "insured" to mean any person or organization qualifying as such under WHO IS AN INSURED (Section II). This section, in turn, provided,

> "If you are designated in the Declarations as:
>
> * * *
>
> d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your 'executive officers' and directors are Insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders."

21. FrontBridge Technologies, Inc. was designated on the Declarations as a corporation. Plaintiffs were officers, directors and stockholder representatives of FrontBridge Technologies, Inc. at all times relevant.

22. The term "Ultimate Net Loss" was defined by the Commercial Umbrella Liability Coverage Form to mean,

> "...the total amount of damages in excess of the 'retained limit' for which the Insured is legally liable in payment of... 'personal and advertising injury'. 'Ultimate Net Loss' may be established by adjudication, arbitration or a compromise settlement to which we have previously agreed in writing.

The term 'retained limit' was defined to mean,

> "The total of all insurance amounts available to the Insured and applicable to any loss covered under this Coverage Part. All insurance amounts available to the Insured as specified above shall include not only any insurance shown in Schedule of Underlying Insurance, of the Umbrella Declarations of this policy, but also any other valid and collectible insurance as specified in Condition 5 Other Insurance."

23. The term "Personal and Advertising Injury" is defined by the Commercial Umbrella Liability Coverage to mean,

> "...injury, including consequential 'bodily injury', arising out of one or more of the following offenses:
>
> * * *
>
> d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> * * *
>
> f. The use of another's advertising idea in your 'advertisement' or
>
> g. Infringing upon another's copyright, trade dress or slogan in your advertisement (Form VCU 100 12 99, p. 14.)



Farmer Smith & Lane, LLP

24. In the Underlying Action, MessageOne sought recovery from FrontBridge and MessageRite for, inter alia, conspiracy to unfairly compete with MessageOne through improper appropriation and use, of not only trade secrets and trademarks, but of other "confidential information". The complaint in this action also alleged facts of disparagement of MessageOne and its services by FrontBridge and MessageRite, under terms recognized by judicial precedent in this district to set forth a claim of covered disparagement.

25. Under the terms of the Policy, Defendants had a duty to fairly investigate, defend and indemnity covered liability claims such as those alleged in the Underlying Action.

26. The allegations of the Third Amended Complaint filed by MessageOne in the Underlying Action, which was the operative pleading at the time of Defendants' refusal to investigate, defend and indemnify the Underlying Action, included the following:

a. As of early 2004, MessageOne was a leading provider of e-mail continuity and disaster recovery solutions and had garnered a reputation for providing leading edge products and services designed to insure continuity in e-mail communications in the case of a catastrophic event or other communications emergency. (Third Amended Complaint, ¶6)

b. Until the Spring of 2004, Defendant FrontBridge, by contrast, operated primarily in the areas of Spam filtering and virus protection. Until that time, neither FrontBridge nor MessageRite had any commercially-viable e-mail continuity product. (Third Amended Complaint, ¶8)

c. Notwithstanding FrontBridge's lack of a functional e-mail continuity product, FrontBridge, on repeated occasions, knowingly misrepresented to customers and potential customers that it had developed and tested such a product. FrontBridge allegedly admitted that it had knowingly made such misrepresentations to customers interested in e-mail continuity solutions, such as those provided by MessageOne. (Third Amended Complaint, ¶9)

d. On or about February 2, 2004, FrontBridge approached MessageOne and established dialogue representing that FrontBridge was interested in entering into a business

transaction whereby FrontBridge would resell MessageOne's e-mail continuity and disaster recovery product to third parties; the parties agreed these discussions would be kept confidential. (Third Amended Complaint, ¶10)

e. During the discussions, FrontBridge solicited ever increasing amounts of information regarding technical aspects of MessageOne's e-mail continuity and disaster recovery solution, in addition to pricing, margins and other trade secret and confidential business information of MessageOne. (Third Amended Complaint, ¶12)

f. FrontBridge and MessageRite conspired to shift MessageRite's business from e-mail archiving into e-mail continuity and disaster recovery. MessageOne alleged it would not have disclosed its trade secrets and confidential information to FrontBridge had FrontBridge disclosed its intent to acquire MessageRite and shift MessageRite's business so that it would compete with MessageOne. MessageOne alleged FrontBridge intentionally withheld this information in order to induce MessageOne to disclose confidential technical and business information. (Third Amended Complaint, ¶19)

g. On August 30, 2004, FrontBridge announced it would not consummate its deal with MessageOne. (Third Amended Complaint, ¶20)

h. FrontBridge and MessageRite used MessageOne's confidential and trade secret information to create a new e-mail continuity and disaster recovery system directly competing with MessageOne and allegedly continued to use to its own benefit "confidential information and trade secrets" taken from MessageOne. (Third Amended Complaint, ¶21)

i. FrontBridge considered the competing e-mail continuity and disaster recovery product it had developed to be a "leading differentiator" between it and other companies, and disclosed the technical and commercial details of this product to Microsoft during discussions of Microsoft's acquisition of FrontBridge. (Third Amended Complaint, ¶23 and 24)

j. FrontBridge and MessageRite solicited actual and potential customers of MessageOne in order to supplant MessageOne as the supplier of e-mail continuity and disaster recovery goods and services. (Third Amended Complaint, ¶26)

k. In addition to counts for trademark infringement and trade secret misappropriation, MessageOne sought recovery from FrontBridge and MessageRite for breach of contract (Third Amended Complaint, p.12), fraud and fraudulent inducement (Third Amended Complaint, p.13), negligent misrepresentation (Third Amended Complaint, p.14), tortious interference with actual and prospective business relations (Third Amended Complaint, p.15), breach of the implied duty of good faith and fair dealing (Third Amended Complaint, p.15), civil conspiracy (Third Amended Complaint, p.16), and "common law unfair competition". (Third Amended Complaint, p.16). In the count for common law unfair competition, MessageOne alleged that FrontBridge had unfairly competed in the marketplace by making false representations regarding "their" goods and services, and that such false misrepresentations had damaged MessageOne and unjustly enriched FrontBridge. It further alleged that FrontBridge had unfairly competed in the marketplace by making knowingly false representations concerning their goods and services to customers and potential customers. (Third Amended Complaint, ¶90 and 91)

27. These allegations presented the potential that the Plaintiffs would be liable for "personal and advertising injury" as defined in the policy, in the defamation or disparagement of organizations or their services, and use of, or infringement upon, defendants' ideas in an advertisement. Defendants' duty to investigate was thus invoked. Defendants' duty to <u>fairly</u> investigate was also invoked, as was its duty to defend, by the potential liability set forth in the allegations of the operative pleading in the Underlying Action.

28. At the time of settlement of the Underlying Action, Plaintiffs paid amounts as consideration for MessageOne's dismissal of claims for wrongful acts covered by the Policy.

Defendants' duty to indemnify encompassed the duty to pay those amounts on behalf of Plaintiffs.

29. Plaintiffs performed, or were excused from performing, all duties incumbent on them under the terms of the policy.

30. Defendants refused to fairly investigate, to defend, and to indemnify Plaintiffs with reference to the liability claimed in the Underlying Action. Defendants thus breached the contract set forth in the policy.

31. As a legal result of Defendants' breach, Plaintiffs have suffered damages in the form of the expense of investigation, defense and settlement of the Underlying Action. Plaintiffs have also incurred the expense of retaining legal counsel to establish their rights to recover under the Policy, which expense was within the contemplation of the parties at the time the Policy was sold, and thus recoverable as damage for breach of contract. Plaintiffs have suffered other consequential damages subject to proof at time of trial of this matter.

## II. SECOND COUNT (Breach of the Implied Obligation of Good Faith & Fair Dealing)

32. Plaintiffs incorporate by reference as though fully set forth the allegations in paragraphs 1 through 31 of this complaint.

33. As a matter of law, the Policy included an implied covenant of good faith and fair dealing that neither the Defendants, nor the insureds, would do anything to impair the right of the other to receive the benefits of the Policy.

34. This implied obligation of good faith and fair dealing obliged Defendants to give at least as much consideration to the interests of the Plaintiffs as Defendants gave to their own interests. Defendants breached this duty.

35. Defendants had a duty to Plaintiffs to fairly investigate, and defend and indemnify against the Underlying Action, because the liability alleged in the Underlying Action was potentially covered by the Policy. Defendants also had a duty to indemnify.



Farmer Smith & Lane, LLP

36. Defendants, through their agents, engaged in a systematic pattern of coercive action designed to impose delay, cost and other burden on Plaintiffs, all for the purpose of discouraging Plaintiffs from continuing to seek the contractual benefits to which they were entitled, and for the purpose of pressuring Plaintiffs to accept a lesser amount from Defendants. Such actions include, but are not limited to, matters alleged in the following paragraphs.

37. After notice of the claim, Defendants failed to conduct any inquiry concerning the Underlying Action or to engage in any investigation of the claim, responding with a perfunctory and factually unsubstantiated denial of the claim invoking exclusions and other limiting language that was either clearly inapplicable, or of such limited scope as to be ineffectual to bar a duty of defense.

38. Defendants' further failed to investigate the claims presented, by failing to conduct a full, fair and thorough investigation of all bases of the claim. Defendants failed to search for and consider evidence that supported coverage for the Underlying Action. Defendants disregarded allegations in the Third Amended Complaint, the operative complaint in the Underlying Action, that set forth a potential for covered liability for disparagement that has been recognized by judicial precedent in this district.

39. Defendants failed to defend the Underlying Action, with knowledge of their duty to defend, and without any proper cause or reason for their failure to defend.

40. Defendants failed to indemnify and pay settlement of the Underlying Action, with knowledge of their duty to indemnify and pay settlement, and without any proper cause or reason for their failure to do so.

41. Defendants relied, as justification for their contractual breach of their duties to investigate, defend and indemnify, on the terms of a policy so unclearly worded and poorly organized as to defy any attempt by a reasonable insured to recognize and understand coverage limitations. As drafted, the Policy defeated any effective notice to insureds of

asserted limiting language. The Policy, with reference to the specific terms relied on by Defendants as limitations to their obligations, fell below the standards required by California law of insurers for clarity, conspicuousness, unambiguity and "understandability". Defendants were at all time aware of the deficiencies of the Policy in this respect, yet continued to rely on asserted limiting terms therein to shirk their duties of investigation, defense and indemnity.

42. Defendants further, in response to Plaintiffs' renewed demand for reimbursement for amounts spent in defense and indemnity of the Underlying Action, purported to undertake a continued investigation of Defendants' coverage obligation for the underlying action. This investigation, however, was not undertaken in good faith, and constituted a breach of Defendants' ongoing duties of good faith and fair dealing to Plaintiffs with respect to this claim. Defendants disregarded evidence that established their defense duty, notwithstanding specific citation both to the language in the Third Amended Complaint in the underlying action, and to judicial authority that established Plaintiffs' right to defense, indemnity and reimbursement under the Policy. In so acting, Defendants not only perpetrated their wrongful denial of FrontBridge's original claim, but unreasonably and without proper cause denied Plaintiff's direct claims for policy benefits.

43. Defendants also failed to acknowledge and act reasonably promptly after receiving communications from Plaintiffs and Plaintiffs' counsel requesting benefits under the Policy.

44. Defendants at no time attempted to reach a prompt, fair and equitable settlement of their obligations, or of the Underlying Action.

45. After Plaintiffs attempted to engage in good faith discussions to secure contractual benefits, Defendants "stonewalled" and delayed payment of Plaintiffs' claims by offering amounts to Plaintiffs that were a tiny percentage of the contractual benefits owed.

46. Defendants engaged insincerely in settlement negotiations with Plaintiffs, to whom Defendants owed a "quasi-fiduciary" duty.

47. As a legal result of Defendants' failures, as alleged here, Plaintiffs suffered damages in the form of investigation expenses, defense expenses, settlement expenses, consequential damages, and the expense of retaining legal counsel to establish coverage under the Policy.

## III. THIRD COUNT (Fraud)

48. Plaintiffs incorporate by reference as though fully set forth the allegations in paragraphs 1 through 47 of this complaint.

49. Defendants have engaged in intentional and express misrepresentations of past and existing facts. Defendants, through the initial drafting of the Atlantic Mutual Insurance Company policy, and the adoption and use of that policy by Defendants OneBeacon Insurance Company and OneBeacon Insurance Group Limited for renewal on June 5, 2004, after acquisition of Atlantic Mutual, expressly and intentionally misrepresented to the Plaintiffs that Defendants intended to provide benefits of defense and indemnity against claims for disparagement under the "personal and advertising injury" coverage of the policy. This misrepresentation was accomplished in part by the use of language in the policy that was broader and more expansive than standard policy language previously used by the insurance industry which afforded separate, and more limited, coverage for "personal injury" and "advertising injury". Defendants, and each of them, further misrepresented that they intended to afford broader "umbrella coverage" protection than that afforded by an excess layer of coverage through the manner in which the policy was drafted, stating a portion of the policy afforded "umbrella coverage", which would afford coverage that was in fact not merely excess to, but broader than, the language afforded by the policy on a "primary" basis. These misrepresentations were made to Plaintiffs by Atlantic Mutual secretary Nancy E. Hadon and Atlantic Mutual president Kenneth C. Smith on or about June 5, 2003, and were restated by

Defendants OneBeacon Insurance Company and OneBeacon Insurance Group Limited at the time of the policy's renewal on or about June 5, 2004. To the extent these representations were made in the standardized form of an insurance policy, they were made to the general public, and are deemed by operation of law (California Civil Code § 1711) to have been intended to defraud all members of the public, including Plaintiffs.

50. These representations were false. At the time they were made, the Defendants had no intent to pay defense and indemnity for claims like those alleged in the Underlying Action. Defendants instead intended to rely on legal authority interpreting different, older and more restrictive insurance policies as an excuse for delay and denial of policy benefit payment. Defendants, at the time of issuing the initial policy and renewing the subsequent policy, intended to restrict their purported "umbrella" coverage to coverage that was merely excess to, and no broader than, the primary coverage afforded by the Policy. Defendants also intended to rely on confusing, poorly worded, inconspicuous and concealed language which Defendant Atlantic Mutual had drafted into the Policy to justify a denial of policy benefits. Defendants concealed their intent in this respect, notwithstanding their duty, pursuant to California Insurance Code § 337 and other statutes and regulations, to disclose such material matter to Plaintiffs. Defendants' preexisting intent to misrepresent is manifested in their hasty repudiation of coverage, perfunctory investigation and strained and unreasonable policy interpretation.

51. Defendants, at all times, and particularly through the employees of Atlantic Mutual Insurance Company charged with the responsibility for drafting the Policy, and the employees of OneBeacon Insurance Company and OneBeacon Insurance Group Limited charged with responsibility for reviewing the language of insurance policies issued as renewals after the acquisition of Atlantic Mutual, knew that the Policy had been drafted in such a way as to promise "personal and advertising injury" coverage that was broader than the coverage traditionally afforded in the insurance industry for "personal injury" and



Farmer Smith & Lane, LLP

"advertising injury" coverage, and further knew that the Atlantic Mutual policy had been drafted to appear to afford broader "umbrella" coverage than is afforded by "excess" coverage. Defendants at all times knew that the Policy had been drafted in such a way as to include concealed, poorly worded, and confusing language that could be relied on as a basis for denial of covered claims for disparagement. And Defendants, and each of them, knew at all times that they intended to rely on this policy language, and on legal interpretations of different policy language, as a basis for refusing to pay benefits under the Policy.

52. Defendants intended to induce Plaintiffs to rely on the broader coverage promised by the Policy, by purchasing the Policy and forgoing the purchase of alternative coverage not attended by the misrepresentations alleged here. Plaintiffs did in fact reasonably rely on Defendants concealments and misrepresentations, and purchased the Policy drafted and issued by Atlantic Mutual and ratified and renewed by Defendants OneBeacon Insurance Company and OneBeacon Insurance Group Limited. Plaintiffs relied upon this coverage, instead of securing coverage from alternate insurers that intended to perform on their contractual obligations. This reliance proved detrimental to Plaintiffs because, when confronted by liability in the Underlying Action for disparagement, they were denied coverage by Defendants. The detriment was also caused in the expenses Plaintiffs incurred in premium payments to defendants and in the expense of pursuing coverage from other insurers, and from Defendants.

53. Plaintiffs were at all times ignorant of Defendants' intention to refuse to perform their obligations under the Policy; this ignorance was reasonable, in light of the lack of disclosure of the Defendants' intent in the terms of the policy, and Plaintiffs' reliance on Defendant's misrepresentations was also reasonable, given the broad scope of coverage promised by both the "personal and advertising injury" portion of the Policy and the "umbrella" portion of the policy, as well as other terms of the Policy.

54. As a legal result of the conduct of Defendants, Plaintiffs have suffered economic damages in the form of premiums paid for a Policy on which Defendants intended to withhold performance, and losses incurred in addition to the loss of the defense and indemnity benefits promised by the Policy. Plaintiffs have been obliged to incur legal expense pursuing recovery from other insurers, and from Defendants, as a consequence of Defendants' fraud and misrepresentation.

## IV. FOURTH COUNT (Fraud-Alternative Theory)

55. The Defendants Atlantic Mutual Insurance Company, OneBeacon Insurance Company and OneBeacon Insurance Group Limited represented, through the terms Atlantic Mutual Insurance Company policies 761-00-58-32-0002 and 761-00-58-32-0003 that said policies afforded coverage for disparagement and use of advertising ideas under the "personal and advertising injury" coverage of the policy, and afforded broader "umbrella" coverage that extended to claims not covered by a primary layer of coverage in the policy. These misrepresentations were made to Plaintiffs through the terms of the policy itself, in the specific definitions of the term "personal and advertising injury" and in the use of the term "umbrella" in captions and headings in the policy. These misrepresentations were made through the policies, as signed by Atlantic Mutual's secretary Nancy E. Hadon and Atlantic Mutual President Kenneth C. Smith. These misrepresentations were made on June 5, 2003, when the policy was first issued, and again on June 5, 2004, when the policy was renewed by Defendants OneBeacon Insurance Company and OneBeacon Insurance Group Limited. Pleading in the alternative to other allegations raised in this complaint, Plaintiff alleges, on information and belief, that these representations were false. Although Plaintiff contends that the policies did in fact afford coverage for disparagement of a competitors services or goods and misappropriation of a competitors advertising ideas, Defendants' claim that no such coverage extends to the liability Plaintiffs confronted in the United States District Court for the Western District of Texas, *MessageOne, Inc. v. FrontBridge Technologies, Inc. and*



Farmer Smith & Lane, LLP

*MessageRite,* Civil Action No. A-04-CA-711-LY (hereinafter the "Underlying Action"). Should the court determine that Defendants are correct in their contention that coverage does not extend to Plaintiffs' losses incurred in investigating, defending and indemnifying against the Underlying Action, Defendant's representations that such coverage <u>was</u> extended by the terms of the two policies were false.

57. Defendants, at all times and particularly through the employees of Atlantic Mutual Insurance Company charged with the responsibility for drafting the policy, and employees of Defendants OneBeacon Insurance Company and OneBeacon Insurance Group Limited charged with approving and ratifying policy language employed by OneBeacon, knew that the policy had been drafted in such a way as to misrepresent a broader scope of "personal and advertising injury" coverage than available under traditionally-worded policies, and to misrepresent an extension of coverage for disparagement of a competitors goods and/or services, and for misuse of a competitor's advertising ideas. Defendants also knew, at all times, that the policies had been drafted to appear to afford broader "umbrella" coverage than is afforded by "excess coverage" and to provide a coverage under the "umbrella" portion of the policy that would expressly cover liability that was not included in the express terms of the underlying "primary" coverage. Defendants at all times knew that the policy had been drafted in such a way as to misrepresent the availability of coverage through language that concealed coverage limitations, was poorly worded and confusing.

58. Defendants intended to induce Plaintiffs to rely on the misrepresentations of the policy, by purchasing the policy and foregoing the purchase of alternative coverage that did not incorporate these misrepresentations, and that did in fact extend broad coverage for "personal and advertising injury", including disparagement of a competitor's goods and/or services and misappropriation of competitors advertising ideas. Defendants also intended to induce Plaintiffs to rely on the misrepresentations in the policy that promised "umbrella" coverage, specifically promising to extend coverage under the "umbrella" portion of the

policy to liability not covered by the "primary" section of the policy, and intended Plaintiffs to forego purchasing alternative coverage that did not contain these misrepresentations. Plaintiffs did in fact reasonably rely on Defendants concealments and misrepresentations, and purchased and renewed the policies Atlantic Mutual had drafted. Plaintiffs relied upon the misrepresentations set forth in the policies, instead of securing coverage from alternate sources, issued by insurers that in fact covered liability for disparagement of a competitor's goods and/or services, and broad "umbrella" coverage to afford protection against claims not covered by underlying "primary" coverage. This reliance proved detrimental to Plaintiffs because, when confronted by liability in the Underlying Action for disparagement, Defendants' policies afforded no coverage.

59. Plaintiffs were at all times ignorant of a lack of coverage under the policies. This ignorance was reasonable, in light of the drafting of the policies to expressly offer more broadly defined "personal and advertising injury" coverage that misrepresented that coverage extended to disparagement of a competitor's goods or services and misuse of a competitors' advertising idea, and to offer "umbrella" coverage under a section of the policy that was not any broader in its scope than the separate "primary" portion of the policy. Plaintiff's reliance on these misrepresentations was reasonable, given the broad scope of coverage promised by the definitions and titles in the policy concerning personal and advertising injury and "umbrella" coverage.

60. As a legal result of the conduct of Defendants, Plaintiffs have suffered economic damages in the form of premiums paid for a Policy which did not afford the coverage represented, and losses incurred in addition to the loss of the defense and indemnity benefits promised by the Policy. Plaintiffs have been obliged to incur legal expense pursuing recovery from other insurers, and from Defendants, as a consequence of Defendants' fraud and misrepresentation.

///



Farmer Smith & Lane, LLP

WHEREFORE, Plaintiffs pray:

1. That the court award them damages, subject to proof, for the breach of contract by Defendants;

2. That the court award them damages, subject to proof, for breach of the implied obligation of good faith and fair dealing by Defendants;

3. That the court award general and special damages to Plaintiffs;

4. That the court award attorneys' fees to Plaintiffs; and

5. That the court extend such other judicial relief as it may deem proper to Plaintiffs.

Respectfully submitted,

Dated: July 15, 2010

FARMER, SMITH & LANE, LLP

By: [signature]
Blane A. Smith
Attorney for Plaintiffs
JEFF DRAZAN and RORY O'DRISCOLL

**DEMAND FOR JURY**

Pursuant to FRCP 38(b) and Local Rule 3-6, Plaintiffs demand a jury trial in this matter.

Respectfully submitted,

Dated: July 15, 2010

FARMER, SMITH & LANE, LLP

By: [signature]
Blane A. Smith
Attorney for Plaintiffs
JEFF DRAZAN and RORY O'DRISCOLL

| | |
|---|---|
| RE: | Jeff Drazan and Rory O'Driscoll v. Atlantic Mutual Ins. Co., et al. |
| COURT: | United States District Court for the Northern District of California |
| ACTION NO.: | 3:10-cv-01371-SI |

## CERTIFICATE OF SERVICE

I certify that I am a citizen of the United States and am employed in Sacramento County, where this mailing occurs. My business address is 3620 American River Drive, Suite 218, Sacramento, California 95864. I am over the age of 18 years and not a party to the within cause. On July 15, 2010, following ordinary business practice, I served the foregoing document(s) described as:

**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT; BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND FRAUD; DEMAND FOR JURY TRIAL (FRCP 38(b); LR3-6)**

addressed to each of the persons named below at the address shown:

| | |
|---|---|
| **ATTORNEY FOR DEFENDANTS:**<br>Gary Selvin, Esq.<br>Hilary Agnost, Esq.<br>Selvin Wraith Halman LLP<br>505 14th Street, Suite 1200<br>Oakland, CA 94612<br>(510) 874-1811<br>(510) 465-8976<br>gselvin@selvinwraith.com<br>hagnost@selvinwraith.com | |

[X] **BY COURTLINK E-FILE:** I caused such document to be electronically uploaded into the Court's electronic filing CM/ECF system, which also constitutes service upon the parties pursuant to Fed.R.Civ.P. 5(b)(2)(D) and Local Rule 5-135(a).

[ ] **BY MAIL:** I placed a true copy in a sealed envelope as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ] **BY PERSONAL SERVICE:** I placed a true copy in a sealed envelope addressed to each person[s] named at the address[es] shown and giving same to a messenger for personal delivery before 5:00 p.m. on the above-mentioned date.

[ ] **BY FACSIMILE:** From facsimile machine telephone number 916/679-6575, on the above-mentioned date, I served a full and complete copy of the above-referenced document[s] by facsimile transmission to the person[s] at the number[s] indicated. **(COUNSEL FOR DEFENDANT ONLY)**

[ ] **BY EMAIL:** Attaching a true and correct copy(ies) thereof in PDF format to the following e-mail address listed above. The transmission was reported as completed and without error.



Farmer Smith & Lane, LLP

☐ **BY OVERNIGHT DELIVERY:** I placed a true copy in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for delivery by Federal Express. Pursuant to that practice, envelopes placed for collection at designated locations during designated hours are delivered to Federal Express with a fully completed airbill, under which all delivery charges are paid by Farmer Smith & Lane, LLP, that same day in the ordinary course of business.

I certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on July 15, 2010, at Sacramento, California.

Susie Hryckewicz

Farmer Smith & Lane, LLP